BOUTALL, Judge.
This appeal involves a suit for rental payments and ad valorem taxes allegedly due under a written lease of immovable property.
The evidence consisted entirely of several factual stipulations and the following documents :
1. A lease of the subject property, dated July, 1967, from Charles L. Holmes to Davis-Ogden, Inc. for a term of ten years at the rate of $1,500.00 per month, in which the lessee further agreed to pay ad valo-rem taxes on the improvements.
2. A lease of the same property, dated December 12, 1968, from Holmes to Silhouette Figure Form, Inc. at the rate of $1,600.00 per month, “for a term of ten (10) years commencing on the first day of the calendar month succeeding the date the building addition to be constructed by the LESSEE ... is completely constructed and ready for use by LESSEE’S customers.”
3. An agreement, dated December 12, 1968 (the same day as the Holmes-Silhouette lease), between Holmes and Davis-Ogden to modify the 1967 lease, whereby Davis-Ogden took cognizance of the Silhouette lease and consented to Silhouette’s immediate entry onto the leased premises for the purpose of remodeling and reconstructing the improvements.
The parties further agreed that no rent or other consideration would be due by Silhouette to Davis-Ogden and that the 1967 lease would remain in full force and effect until the Holmes-Silhouette lease commenced in accordance with its terms, at which time the 1967 lease would be terminated and cancelled and the lessee released from further liability.
The agreement further provided:
“In no event shall this release be construed as releasing Davis-Ogden or said individuals for any liabilities which may accrue under said lease agreement dated July 3, 1967, which are attributable to the period prior to the date of cancellation of said lease as hereinabove set fourth.”
4. A letter from Silhouette to Holmes, dated April 23, 1969, agreeing to pay $100.00 per month from January 31, 1969 until the building addition was completed, and obligating itself to commence construction within thirty days, to cause the construction to be prosecuted diligently to completion, and to have the work completed so as to cause full rental under the lease to be payable not later than January 1, 1970.
5. A letter from Silhouette to Davis-Ogden, dated May 5, 1969, stating that construction had started that day, that the construction contract should be finalized that week, and that the contract should be finalized that week, and that the contract would call for completion within 120 days from the issuance of the permit. Stating further that unforeseen delays could hinder completion, Silhouette bound and obligated itself to cause construction to be prosecuted diligently to completion so as to cause full rental under the new lease to be payable by Silhouette not later than January 1, 1970.
6. A letter from Silhouette to Davis-Ogden’s attorney, dated November 11, 1969, commenting on the latter’s October 30, 1969 letter to Holmes (not in evidence).
Silhouette informed the attorney of its May letter to Davis-Ogden, from which no exceptions had -been com *823 municated, and assured the attorney that Silhouette had made every possible effort to push the project to completion. Silhouette reiterated its commitment to assume lease payments by January 1, 1970, regardless of completion.
The following facts were also stipulated:
A. Davis-Ogden paid the rent due through October, 1969.
B. Davis-Ogden did not pay the rent for November or December, 1969, ' nor did it pay the ad valorem taxes for 1969, which were paid by Holmes.
C. Holmes received $100.00 per month from Silhouette from January 31, 1969 through December 31, 1969 and $1,600.00 per month thereafter.
D. Davis-Ogden did not become aware of the $100.00 monthly payments from Silhouette to Holmes until late October, 1969 at which time Davis-Ogden refused to pay any further rent under the 1967 lease.
Holmes sued Davis-Ogden and Silhouette for the November and December rental payments and the 1969 taxes. Davis-Ogden denied liability on the basis that Silhouette orally agreed to but did not commence construction immediately after execution of the December 12, 1968 agreement and did not diligently prosecute the construction to completion within a reasonable time. Davis-Ogden further asserted that Holmes, by accepting the $100.00 payments, acted in concert with Silhouette, condoned its unreasonable delays, and actually became Silhouette’s lessor and war-rantor against eviction. By reconventional demand, Davis-Ogden sought the return of all amounts paid since the modification agreement.
Silhouette’s answer alleged that after the December 12, 1968 agreement, it had diligently commenced work on plans and specifications, secured bids, completed construction and generally fulfilled its obligations under that agreement.
The trial court rendered judgment in favor of Holmes and against Davis-Ogden, further dismissing the suit as to Silhouette. Davis-Ogden appealed. The judgment as to Silhouette is now final, and the issues on appeal are only between Holmes and Davis-Ogden.
This controversy arose because neither the Holmes-Silhouette lease nor the modification agreement on the same date between Holmes and Davis-Ogden stipulated a fixed time by which Silhouette’s construction was to be completed. Apparently, both Holmes and Davis-Ogden became dissatisfied with Silhouette’s progress (or lack of progress), and this led to Silhouette’s letters on April 23 and May 5, setting a self-imposed deadline of January 1, 1970 for completion of construction. Davis-Ogden offered no objection to this deadline and continued paying rent for six months thereafter until it discovered Silhouette’s supplemental payments to Holmes (which in effect made Davis-Ogden the only party to the 1967 lease sustaining any loss from delays in completion of construction).
Davis-Ogden’s original obligation to pay rent for the entire ten year term of the lease was modified by the subsequent agreement, which (when read with the Holmes-Silhouette lease of which it took cognizance) expressly provided that the existing lease remained in effect until the Silhouette lease commenced after construction was completed. Construction was not completed until after January 1, 1970.
Davis-Ogden has not proved that any delay in completion was occasioned through any fault or willful conduct on Holmes’s part, nor has it advanced any theory under which Holmes would be liable for Silhouette’s failure to diligently perform the renovation within a reasonable time. Additionally there is no evidence showing what caused the delay in completion or, except for passage of time alone, that the delay *824 might be unreasonable. Holmes is therefore entitled under the express terms of the agreement to collect the rent and taxes demanded. Since there was no third party demand against Silhouette, the question of whether Davis-Ogden had a cause of action for damages against that party is not before us.
The judgment is affirmed.
Affirmed.
LEMMON, J., dissented with written reasons attached.